# Exhibit 1

**BENCHLING, INC.**
**CONFIDENTIAL INFORMATION AND INVENTION ASSIGNMENT AGREEMENT**

BENCHLING, INC. ((together with its parent, subsidiaries, affiliates and any related entities, collectively the "**Company**") operates a business that includes the use and development of certain Proprietary Information (defined below). The Company's business success and competitive position in the industry are dependent on keeping Proprietary Information confidential. The Company's ability to maintain its market position and future growth depends to a significant degree on the Company's development, possession and protection of confidential and Proprietary Information and trade secrets, and the Company's agreement to provide its employees with access to such confidential and Proprietary Information and trade secrets.

I understand that during my employment or engagement with the Company I shall be granted access to and will use Proprietary Information in the performance of my duties. I also understand that the Company agrees to engage, hire or to continue to employ me in exchange for me entering into this Confidential Information and Invention Assignment Agreement ("Agreement") in order to protect the Company's legitimate business interests. In further consideration of my present and future employment or engagement with the Company, access to confidential and Proprietary Information, receipt of specialized training, and the compensation now and hereafter paid to me, I agree to the following, which is ancillary to my employment relationship with the Company:

1. PROPRIETARY INFORMATION

1.1 I understand and acknowledge that my work as an employee of the Company will involve access to and/or creation of confidential, proprietary, and trade secret information of the Company and its customers, vendors, suppliers, consultants, contractors or business associates (collectively, "***Proprietary Information***"). I further understand and acknowledge that the Company and its customers, vendors, suppliers, consultants, contractors or business associates have developed, compiled, and otherwise obtained this Proprietary Information often at great expense, and that such information has great value to their respective businesses. For purposes of this Agreement the term "*customers*" includes without limitation any licensees, and "*suppliers*" includes without limitation any licensors to the Company. I agree at all times to hold in the strictest confidence and in trust for the sole benefit of the Company, and to the extent it relates to such third parties, its customers, vendors, suppliers, partners, consultants, contractors or business associates, each and all of the Proprietary Information, except to the extent necessary to carry out my duties as an employee of the Company, and subject to the exceptions outlined in Section 1.6 of this Agreement. I further understand and agree that the publication or other disclosure of Proprietary Information through literature or speeches or other communication to the public must be approved in advance in writing by a duly authorized officer of the Company.

1.2 I understand, acknowledge and agree that, for purposes of this Agreement, Proprietary Information includes all confidential, proprietary or trade secret information and ideas in whatever form or state of development, tangible or intangible, whether disclosed to or learned or developed by me alone or with others, and whether or not marked confidential or proprietary, pertaining in any manner to the business of the Company or to the Company's customers, vendors, suppliers, partners, including but not limited to any and all (i) technical information, know-how, research, designs, diagrams, plans, specifications, structures, functions, computer codes, trade secrets, ideas, concepts, inventions, discoveries, patent applications, products, processes, methods, patterns, templates, prototypes, formulas or formulations, drawings, schematics, works in process, systems, technologies, work product, and other confidential and proprietary information in whatever form and as now or hereafter constituted, and any and all improvements or modifications to or derivative

works of any of the foregoing, any and all associated information or databases, and any and all intellectual property rights or other intangible rights or claims of any kind or nature with respect to the foregoing (collectively, **"Intellectual Property"**); (ii) Inventions (defined below); (iii) financial and marketing information including costs, profits, results, markets, strategies and sales of the Company or any of its customers, vendors or suppliers; (iv) other financial information or business plans of the Company, including but not limited to past, current, or future activities of the Company such as funding activities, lists of stockholders or investors, market sizing data, and intellectual property strategies and other legal processes; (v) identities of or other information regarding actual or potential customers or trade contacts of the Company, including but not limited to any customer or vendor or supplier lists; (vi) plans for future development and new product concepts; (vii) drawings, models, sketches, prototypes, and any written or oral instructions or comments related thereto; and (viii) Personal Information (defined below).

1.3 For these purposes, it is agreed that such information will not be Proprietary Information to the extent that (i) the information is, or becomes, known to the general public through lawful means and through no act or omission by me or any agent or representative of mine; (ii) the information was rightfully in my possession or part of my general skill or knowledge prior to the first date of my employment or engagement by the Company, and was not received from the Company or subject to any confidentiality or proprietary restrictions of any kind; or (iii) the information is disclosed to me without confidentiality or proprietary restriction by a third party who rightfully possesses the information without confidentiality or proprietary restrictions and who did not learn of it, directly or indirectly, from the Company.

1.4 I agree that I will maintain at my work station or in other places under my control only such Proprietary Information that I have a current "need to know," and that I will return to the appropriate person or entity or location, or otherwise properly dispose of, Proprietary Information once my need to know no longer exists. I agree that I will not make copies of Proprietary Information unless I have a legitimate need for such copies in connection with my work and in any event shall not retain any such copies once my need to know no longer exists. I expressly agree that my need to know shall no longer exist after my employment terminates.

1.5 I represent that my work as an employee of the Company is and will be my own original work and does not and will not use or incorporate or breach any agreement or obligation to keep in confidence or not use any proprietary information, confidential information, or trade secret information or knowledge or data acquired by me prior to my becoming an employee of the Company or otherwise, and I have and will not improperly use or incorporate or disclose to the Company, or induce the Company to use or incorporate or disclose, any confidential, proprietary or trade secret information or knowledge or data belonging to any previous employer or other person or entity. Without limiting the foregoing, I will not bring onto the premises of the Company or disclose or distribute any nonpublic documents or any property belonging to any former employer or any other person or entity to whom I have an obligation of confidentiality or nonuse unless consented to in writing by that former employer or other person or entity.

1.6 **I understand that nothing in this Agreement shall prohibit or discourage me from discussing or disclosing my wages, from disclosing information about the Company's working conditions, or from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that I have reason to believe is unlawful. I also understand that nothing in this Agreement prevents me from disclosing relevant or responsive information to the EEOC, NLRB, any state administrative agency or any other governmental body with respect to any claims or complaints or from participating in protected concerted activity. I further understand that nothing in this Agreement precludes me from reporting possible**

**violations of state or federal law or regulation to any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, Congress, and any agency Inspector General, or making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. I also understand that nothing in this Agreement limits my ability to communicate with any government agencies or entities or otherwise participate in or fully cooperate with any investigation or proceeding that may be conducted by any governmental agency or entity, including providing documents or other information, without notice to or approval from the Company. I understand that I can provide Proprietary Information to such government agencies or entities without risk of being held liable by the Company for breach of this Agreement. I also understand that this Agreement does not limit my right to receive an award for information provided to any such governmental agency or entity.**

2. THIRD-PARTY INFORMATION

I recognize that the Company has received and in the future will receive from third parties their confidential and/or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for limited purposes (**"Third Party Information"**). I agree that I owe the Company and such other parties, during the entire term of my employment or engagement and at all times thereafter, a duty to hold all such Third Party Information in the strictest confidence and not to disclose it to any person or entity (except as necessary in carrying out my work for the Company consistent with the Company's agreement with such other party and subject to the exceptions outlined in Section 1.6).

3. PERSONAL INFORMATION

I understand that the Company has received and in the future will receive personally identifiable information (PII) from customers, suppliers, employees, consultants, contractors, advisors or third parties, including but not limited to names, addresses, telephone or facsimile numbers, Social Security Numbers, user names, passwords, background information, credit card or banking information, health information, contact information, or other information entrusted to the Company (**"Personal Information"**). I agree that I owe the Company and such other parties, during the entire term of my employment and thereafter, a duty to hold all such information in the strictest confidence and not to disclose it to any person or entity (except as necessary in carrying out my work for the Company consistent with the Company's agreement with such other party). I understand that there are laws in the United States and other countries that protect Personal Information, and that I must not use Personal Information other than for the purpose for which it was originally obtained by the Company or make any disclosures of Personal Information to any third party or from one country to another without the prior approval of a duly authorized officer of the Company.

4. ASSIGNMENT OF INVENTIONS

4.1 I agree that the Company and its successors or assigns shall be the sole and exclusive owner, in perpetuity and throughout the universe, of any and all Intellectual Property and any and all patents, copyrights, works of authorship, moral rights (defined as all paternity, integrity, disclosure, withdrawal, special and any other similar rights recognized by the law of any jurisdiction or country), trademarks, service marks, logos, trade dress, database rights, trade secrets, and other proprietary information rights, contract rights, goodwill, and other intellectual property rights or intangible rights or claims with respect to any of the foregoing, and any and all improvements or modifications to or derivative works of any of the foregoing, whether or not subject to patent or copyright or other protection and in any state of development or form or media, that have been or will be conceived, developed, reduced to practice or authored by me alone or with others (i) during the entire term of my employment or engagement, whether or not conceived or developed during regular business hours, and whether or not conceived before, on,

or after the date hereof; or (ii) at any time after termination of my employment or engagement, if based on or incorporating or referencing any of the Proprietary Information or Third Party Information to any extent (collectively **"Inventions"**), free of any claims by me or any related persons or entities.

4.2 I hereby irrevocably assign and transfer to the Company and its successors and assigns, without additional consideration, all right, title and interest throughout the universe in and to each and all of the Inventions in perpetuity. Such assignment and transfer shall be deemed made by me in each case as of the time of the conception, development, or reduction to practice of the subject Invention on a continuous basis. I also agree to sign and deliver additional documents if and as requested by the Company or its successors or assigns to confirm such assignment and transfer.

4.3 I UNDERSTAND THAT THE ASSIGNMENTS AND TRANSFERS BY ME TO THE COMPANY HEREUNDER DO NOT APPLY TO INVENTIONS THAT QUALIFY UNDER LABOR CODE SECTION 2870, WHICH IS SET FORTH ON SCHEDULE A ATTACHED TO THIS AGREEMENT. This Section satisfies the written notice and other requirements of Labor Code section 2870 *et seq* and any other equivalent laws of another state to which I may be subject. To avoid future confusion or dispute, I have listed on Schedule B hereto a description of all inventions and other Intellectual Property, if any, developed or conceived by me in which I claim any ownership or other right (collectively, **"Excluded Inventions"**). It is understood and agreed that the attached list is a complete listing of all Excluded Inventions that are to be excluded from this Agreement as having been made prior to my employment or engagement by the Company. I understand that, by not listing an invention or other Intellectual Property, I am acknowledging that such invention or other Intellectual Property was not developed or conceived before my employment or engagement with the Company commenced. If no items are listed on Schedule B, I represent that I have no such inventions or materials at the time of signing this Agreement. Notwithstanding the foregoing, I shall not include or incorporate any elements from any patentable inventions or copyrightable materials listed on Schedule B into any Company works and, to the extent that I do, I agree the Company shall be permitted to use such elements royalty and fee free in perpetuity without payment of any license or fee to me or to any third party and I hereby grant the Company a non-exclusive and worldwide license, with rights to sublicense through multiple levels of sublicensees, make derivative works of, distribute, publicly perform and publicly display in any form or medium, whether now known or later developed, make, have made, use, sell, import, offer for sale and exercise any and all present or future rights in such inventions. I also agree that I shall promptly inform the Company of any Inventions I may develop during my employment.

4.4 I agree to maintain adequate and current written records on the development of all Inventions and to disclose promptly to an appropriate officer of the Company all Inventions and relevant records, which will remain the sole property of the Company. Without limiting my other obligations hereunder, I further agree to promptly disclose to the Legal Department all information and records relating to any Inventions developed (i) during my period of employment or engagement or (ii) during the one-year period after my employment or engagement terminates for any reason or no reason, to the extent such post-employment or post-engagement Inventions relate to any of the Proprietary Information, including but not limited to Inventions developed during my employment or engagement. Any disclosures made by me following my period of employment or engagement will be received by the Company in confidence for the purpose of determining if the Inventions have been based on any Proprietary Information, and are subject to the terms of this Agreement.

4.5 I acknowledge and agree that all original works of authorship that are made by me (either alone or with others) within the scope of my employment or engagement and that are protectable by copyright are "works made for hire," pursuant to United States Copyright Act

(17 U.S.C. Section 101 *et seq*.) as amended or superseded.

5. NO RIGHT TO PRIVACY

I understand and agree that all information generated, received, or maintained by or for me arising out of or in connection with my employment with the Company or using the equipment or software of the Company (including but not limited to computer systems and electronic-mail or voicemail systems) is the property of the Company, and I hereby waive any property or privacy rights that I may have with respect to all such information. I understand that I shall have no expectation of privacy with respect to information transmitted over, received by, or stored in any electronic communications device, server, computer, or other equipment or device owned, leased, or operated in whole or in part by or on behalf of the Company, whether intended to be business or personal.

6. SAFEGUARDING PROPRIETARY INFORMATION, THIRD PARTY INFORMATION OR PERSONAL INFORMATION

6.1 I understand that avoiding loss or theft of Proprietary Information, Third Party Information or Personal Information is an important part of my duties. I will not allow any other person to use any office key, access card, code or computer passwords, to access any office premises, my computer or the Company's network, without prior approval from a duly authorized officer of the Company. I will follow all instructions from the Company about avoiding loss or theft of Proprietary Information, Third Party Information or Personal Information, including but not limited to placing appropriate legends upon documents signifying their sensitive nature. I will only use secure networks established by the Company when using Proprietary Information, Third Party Information or Personal Information. I will immediately report to the Company any loss or suspected loss of Proprietary Information, Third Party Information or Personal Information, and any suspicious activity such as external hacking attempts, or unusual internal activity.

6.2 Given the sensitivity of Proprietary Information, Third Party Information and Personal Information, I understand that I may only handle or dispose of such information by secure methods approved by the Company.

6.3 I agree to take all reasonable steps to maintain the confidentiality of Proprietary Information, Third Party Information and Personal Information. I also agree to take appropriate steps in handling Proprietary Information, Third Party Information and Personal Information in order to minimize the possibility that any such information may be disclosed. Documents or other materials which contain Proprietary Information, Third Party Information and Personal Information shall not be removed from Company premises without special reasons, or unless required in the performance of work. I also agree to comply with all Company policies regarding the safeguarding and security of information or property.

6.4 I will not incorporate into any Company software or otherwise deliver to the Company any software code licensed under the GNU General Public License or Lesser General Public License or any other license that, by its terms, requires or conditions the use or distribution of such code on the disclosure, license or distribution of any source code owned or licensed by the Company.

6.5 I agree not to export, re-export or transfer, directly or indirectly, any United States technical data acquired from the Company or any products utilizing such data, in violation of United States export laws or regulations.

7. NON-INTERFERENCE WITH COMPANY BUSINESS; NON-SOLICITATION

7.1 I acknowledge that, during my employment with the Company, I owe both a duty of loyalty and, if I am an officer of the company who participates in management, a fiduciary duty to the Company, and such duties prohibit me from (1) engaging in any business activity that is or may be competitive with, or that would otherwise conflict with, my employment with the Company and (2) from assisting any other person or entity

in competing with the Company or in preparing to engage in competition with the business or proposed business of the Company, in either case at all times while I remain employed by the Company.

7.2 I understand that the Company's business relationships with its employees, customers, vendors, suppliers, consultants, contractors, business associates, and other persons or entities are valuable business assets, and that I would not have access to these persons or entities and information related thereto but for my employment or engagement with the Company. I agree that during my employment by the Company and for a period of one (1) year after the date my employment by the Company ends for any reason, including but not limited to voluntary termination by me or involuntary termination by the Company, I will not, whether acting alone or in conjunction with others directly or indirectly: (i) induce, solicit, or attempt to induce, solicit or recruit any employee, contractor or other provider of services to the Company to become an employee, contractor or other provider of services to or for any other person or entity, or to otherwise alter their relationship with the Company which means that I will not: (x) disclose to any third party for the purpose of recruitment the names, compensation, contacts, backgrounds or qualifications of any employees, contractors or service providers or otherwise identify them as potential candidates for employment or to provide services; or (y) personally or through any other person approach, interview, or otherwise solicit Company employees or contractors to work for me or any other person or employer or to terminate their employment with the Company or violate any agreement with or duty to the Company; or (ii) make any disparaging statements concerning the Company or its products, to the fullest extent such restrictions are permissible under applicable law, subject to the exceptions outlined in Section 1.6 of this Agreement. The above restrictions shall be in addition to the nondisclosure, nonuse and other obligations and restrictions contained in this Agreement.

7.3 Non-Solicitation using trade secrets. I understand and agree that I may not misappropriate (or threaten to misappropriate) any Company trade secrets without the Company's written consent, subject to the exceptions outlined in Section 1.6 of this Agreement. This obligation means, among other things, that I may not misappropriate or threaten to misappropriate the Company's trade secrets, whether directly or indirectly, on behalf of myself or others, to attempt to call on, solicit or obtain business from any actual or prospective client, customer, or business partner of the Company, other than for authorized Company business activities. This prohibition applies during and after my employment, so long as the information remains a trade secret. Without limitation, the Company considers the following information to be its trade secrets: customer lists; confidential customer information, including without limitation financial information; terms of business with customers; marketing tactics; and any other formula, pattern, compilation, program, device, method, technique or process that: (i) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. I agree to take all reasonable steps to maintain the confidentiality of the Company's trade secrets.

## 8. Employment At-Will

I acknowledge that nothing in this Agreement shall be construed to imply that the term of my employment is of any definite duration, rather, I understand that I am employed by the Company on an "at-will" basis, which means that either the Company or I can terminate the employment relationship at any time with or without advance notice or warning, and with or without cause.

## 9. Obligations Upon Termination

9.1 On termination of my employment or engagement with the Company, or at any time the Company requests, I will immediately deliver to the Company all property belonging to it and all documentation and other materials containing any Proprietary Information, Third Party

Information, or Personal Information in any form or media (including all copies) in my possession or control, whether prepared by me or others, and regardless of whether such information is stored on a personal device, personal storage device or account, or elsewhere. If requested by the Company, I further agree that I will sign and deliver the Termination Certificate substantially in the form attached as Schedule C to this Agreement in which I confirm that I have complied with the requirements of this Agreement and that I am aware that certain restrictions imposed upon me by this Agreement continue after termination of my employment. I understand, however, that my rights and obligations under this Agreement will continue even if I do not sign a Termination Certificate.

9.2 On termination of my employment or engagement with the Company, I hereby consent to the Company's notification of my subsequent employer or other persons or entities of my obligations under this Agreement. I further agree that I will inform any subsequent employer or company to which I provide services of my obligations under this Agreement.

9.3 During and after the period of my employment with the Company, and at the Company's request and expense, I will assist the Company in every proper way, including consenting to and joining in any action, to obtain and enforce United States and foreign Intellectual Property rights relating to the Company's Inventions in all countries. If the Company is unable to secure my signature on any document needed in connection with such purposes, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, which appointment is coupled with an interest, to act on my behalf to execute and file any such documents and to do all other lawfully permitted acts to further such purposes with the same legal force and effect as if executed by me.

## 10. DTSA Notice

Pursuant to 18 U.S.C. 1833(b), an individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Further, an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

## 11. Remedies

I recognize that nothing in this Agreement is intended to limit any rights or remedies the Company may have under the Uniform Trade Secrets Act or other applicable laws in any jurisdiction, all of which are reserved by the Company, and that I could face possible criminal and civil actions, including imprisonment and monetary liability, if I misappropriate the trade secrets of the Company or its customers, vendors, suppliers, consultants, contractors or business associates. In addition, the parties agree and recognize that a Party's violation of this Agreement could cause the other Party irreparable harm and significant injury, the amount of which may be extremely difficult to estimate, thus, making any remedy at law or in damages inadequate. Therefore, the Parties agree that in the event of a breach or threatened breach that involves Proprietary Information, trade secrets, Inventions, Excluded Inventions, Third Party Information or Personal Information, either Party shall have the right to seek temporary, preliminary and permanent injunctive relief. In any action relating to enforcement or breach or threatened breach of this Agreement, the Company and I agree that the prevailing party in the action shall be entitled to an award of all reasonable attorneys' fees and costs incurred by the prevailing party.

12. SUCCESSORS AND ASSIGNS

I understand and agree that the Company may assign or transfer or subcontract or delegate to another person or entity this Agreement or any of its rights or obligations under this Agreement at any time. I further understand and agree that I may not and shall not assign or transfer or subcontract or delegate this Agreement or any of my rights or obligations under this Agreement, and that any attempt to do so shall be null and void. Subject to and without limiting the foregoing restrictions, this Agreement shall be binding upon me and my heirs, devisees, spouses, executors, administrators, representatives and successors, and shall inure to the benefit of the Company and its affiliates, successors and assigns.

13. SURVIVAL

I understand that each and all of my obligations contained in this Agreement, including but not limited to the non-disclosure and nonuse restrictions set forth in Section 1 of this Agreement, the non-solicitation restrictions set forth in Section 7 and the return of Company Property in Section 9 hereof, shall survive the termination of my employment or engagement with the Company or the termination of this Agreement and remain in full force and effect.

14. SEVERABILITY

If any provision of this Agreement is determined to be invalid, unenforceable or illegal, the validity or enforceability of the other provisions shall not be affected. In addition, if any one or more provisions contained in this Agreement shall be held to be excessively broad as to duration, geographical scope, activity, subject, or otherwise, it shall be construed by "blue-penciling," limiting, reforming or reducing it, so as to be enforceable to the maximum extent with applicable law.

15. GOVERNING LAW; JURISDICTION

I understand that the interpretation, validity, enforceability, and performance of this Agreement and all matters arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the State of California, without application of conflict of law rules. Any and all claims or actions arising out of or relating to this Agreement shall be governed by the parties' Arbitration Agreement.

16. WAIVER

No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

17. ENTIRE AGREEMENT

The terms of this Agreement are our final and entire agreement with respect to the subject matter hereof; shall supersede all prior or other current understandings or discussions between the parties; and may not be contradicted by evidence of any prior or contemporaneous agreement. No modification or amendment of this Agreement shall be binding unless executed in writing by me and a duly authorized officer of the Company.

18. INTERPRETATION

When the context requires, the plural shall include the singular and the singular the plural; and any gender shall include any other gender. To the extent permitted by law, this Agreement shall not be construed against the drafter as the parties have been, or had the opportunity to be, represented by counsel in the negotiation and drafting of this Agreement. Section headings are not part of this Agreement and are only for the convenience of the parties.

19. MISCELLANEOUS.

Each party represents and warrants that such party has all necessary power and authority to execute and deliver this Agreement and to perform his or her or its obligations hereunder.

This Agreement may be executed in counterparts, which together will be the same instrument.

I HAVE CAREFULLY READ THIS AGREEMENT AND UNDERSTAND ITS TERMS. I ACKNOWLEDGE THAT IN ENTERING INTO AND EXECUTING THIS AGREEMENT I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL. I HAVE COMPLETED SCHEDULE B BEFORE SIGNING THIS AGREEMENT, LISTING ALL INVENTIONS AND RIGHTS THAT I WISH TO EXCLUDE FROM OPERATION OF THIS AGREEMENT.

This Agreement is made and entered into as of the date set forth below and is effective as of the first day of my employment or engagement with the Company,

Signed by:
Nithin Parsan
08F711E40A834E3...

Signature: ________________________

Print Name: Nithin Parsan

Date Signed: Apr 8, 2026

# Schedule A

## California Labor Code Section 2870

## Employment Agreements; Assignments of Rights

"(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

## Schedule B

**Excluded Inventions**

1. Except as set forth below, there are no Excluded Inventions that I wish to exclude from the operation of this Agreement (attach additional sheets if necessary):

2. Due to prior confidentiality agreement(s), I cannot complete the above disclosure with respect to the Excluded Inventions generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe the following parties (attach additional sheets if necessary):

| Inventions or Improvements | Parties | Relationship |
| --- | --- | --- |

**[Please note: Any blanks not filled in will be deemed to indicate "none"]**

# Schedule C

## Termination Certificate Concerning

## Company Proprietary Information

**This is to certify that I have returned all property of Benchling, Inc. (the "Company"), including without limitation any Proprietary Information, furnished to or created, made, conceived, invented, discovered, developed, reduced to practice or suggested by me, alone or together with others in the course of or incident to my employment with the Company, and that I did not make or distribute any copies of the foregoing, or to the extent such copies were made I have returned them to the Company.**

**I further certify that I have reviewed the Confidential Information and Invention Assignment Agreement (the "Agreement") signed by me and I confirm that I have complied with and will continue to comply with each and all of its terms and conditions, including without limitation the restrictions on disclosure of Proprietary Information (as defined in the Agreement). This certificate in no manner limits my responsibilities or the Company's rights or remedies under the Agreement or under applicable law.**

**TO BE SIGNED AT TERMINATION OF EMPLOYMENT**:

Signature: ______________________________

Print Name: _____________________________

Date: __________________________________

docusign

## Certificate Of Completion

Envelope Id: 0A7DC7E3-B214-474A-AC47-CB77BC6A7EE5 | Status: Completed

Subject: Benchling [CA] Confidential Information and Invention Assignment Agreement

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 12 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Benchling People Team |
| AutoNav: Enabled | | 680 Folsom St. |
| EnvelopeId Stamping: Enabled | | Floor 10 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | San Francisco, CA 94107 |
| | | fa-ashby-docusign@benchling.com |
| | | IP Address: 52.1.84.42 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>4/8/2026 11:03:47 AM | Holder: Benchling People Team<br>fa-ashby-docusign@benchling.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Nithin Parsan<br>nithinparsan@gmail.com<br>Security Level: Email, Account Authentication (None) | Signed by:<br>Nthin Parsan<br>08F711E40A834E3...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address:<br>2603:3024:18aa:f800:99d0:9bc8:78b9:d467 | Sent: 4/8/2026 11:04:42 AM<br>Viewed: 4/8/2026 12:39:02 PM<br>Signed: 4/8/2026 12:43:18 PM |

**Electronic Record and Signature Disclosure:**
Accepted: 4/8/2026 12:39:02 PM
ID: fda2c05d-62cd-4a8d-be8e-e61e10284a60

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Deborah Riedesel<br>deborah@benchling.com<br>Recruiting Ops Manager<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 4/8/2026 12:43:19 PM |

**Electronic Record and Signature Disclosure:**
Not Offered via Docusign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/8/2026 11:04:42 AM |
| Certified Delivered | Security Checked | 4/8/2026 12:39:02 PM |
| Signing Complete | Security Checked | 4/8/2026 12:43:18 PM |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Completed | Security Checked | 4/8/2026 12:43:19 PM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Benchling (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Benchling:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: finance@benchling.com

**To advise Benchling of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at sajith@benchling.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Benchling**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to finance@benchling.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Benchling**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to finance@benchling.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Benchling as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Benchling during the course of your relationship with Benchling.