Jordan R. Jaffe, SBN 254886
jjaffe@wsgr.com
Stephanie C. Cheng, SBN 319856
stephanie.cheng@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA 94105-1126
Telephone: 415.947.2000
Facsimile: 866.974.7329

*Attorneys for Defendants Nithin Parsan, David Li, HB 383, LLC, and ARCX Bio LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

BENCHLING, INC.

Plaintiff,

v.

NITHIN PARSAN; DAVID LI; HB 383, LLC; and ARCX BIO LLC;

Defendants.

Case No. 3:26-cv-11898-RS

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

| | |
|---|---|
| DATE: | January 14, 2027 |
| TIME: | 1:30 p.m. |
| DEPT: | Courtroom 12 – 19th Floor |
| JUDGE: | Honorable Richard Seeborg |

## TABLE OF CONTENTS


NOTICE OF MOTION AND MOTION .......... 1

STATEMENT OF ISSUES TO BE DECIDED .......... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

A. The Arbitration Agreements. .......... 3

1. The Parsan CIIAA and MAA. .......... 3

2. The HB 383 IC Agreement. .......... 4

3. JAMS Rules. .......... 4

III. LEGAL STANDARD .......... 5

A. Nonsignatory's Ability to Compel Arbitration. .......... 6

B. A Stay Pending Arbitration. .......... 6

IV. ARGUMENT .......... 7

A. Valid Arbitration Agreements Exist .......... 7

1. The Parsan MAA. .......... 7

2. The HB 383 IC Agreement. .......... 8

B. The Parties Delegated Arbitrability. .......... 8

C. Alternatively, Every Claim Against Mr. Parsan, HB 383, and Mr. Li Falls Within the Arbitration Agreements. .......... 9

D. Benchling Must Arbitrate Its Claims Against Mr. Li Under Equitable Estoppel. .......... 11

E. Benchling Must Arbitrate Its Claims Against ArcX Under Equitable Estoppel. .......... 12

F. The Court Should Stay This Action Pending Arbitration. .......... 15

V. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

## CASES

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) .......... 6

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......... 5

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .......... 8

*CAP Diagnostics, LLC v. Emeritus Med. Tech. LLC*, 2023 U.S. Dist. LEXIS 215433 (C.D. Cal. Oct. 25, 2023) .......... 13, 15

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022) .......... 5, 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .......... 5

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) .......... 15

*Coinmint, LLC v. DX Corr Design, Inc.*, 2023 U.S. Dist. LEXIS 235158 (N.D. Cal. Apr. 24, 2023) .......... 12

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) .......... 5

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) .......... 5

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190 (9th Cir. 2024) .......... 5, 8

*Ford Motor Warranty Cases*, 17 Cal. 5th 1122 (2025) .......... 6, 11, 12, 14, 15

*Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867 (9th Cir. 2021) .......... 13

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) .......... 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) .......... 8, 9, 11

*Herrera v. Cathay Pacific Airways Ltd.*, 104 F.4th 702 (9th Cir. 2024) .......... 12

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) .......... 5

*In re Google Cloud Contact Ctr. AI Priv. Litig.*, 2026 U.S. Dist. LEXIS 242716 (N.D. Cal. Oct. 22, 2026) .......... 6

*In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076 (9th Cir. 2024) .......... 7, 16

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024) .......... 7

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) .......... 6, 15

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) .......... 16

*Los Angeles Memorial Coliseum Com. v. National Football League*, 634 F.2d 1197 (9th Cir. 1980) .......... 16

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042 (2001) .......... 7

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) .......... 5

*Nutanix, Inc. v. Tessell, Inc.*, 2025 U.S. Dist. LEXIS 45307 (N.D. Cal. Mar. 12, 2025) .......... 13, 14

*Olson v. FCA US, LLC*, 176 F.4th 612 (9th Cir. 2026) .......... 6, 15

*PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) .......... 5

*Patrick v. Running Warehouse, LLC*, 93 F.4th 468 (9th Cir. 2024) .......... 8

*Ruby Grapes, LLC v. UPS, Inc.*, 2026 U.S. Dist. LEXIS 76794 (N.D. Cal. Apr. 8, 2026) .......... 7

*Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209 (9th Cir. 2026) .......... 8

*Smith v. Spizzirri*, 601 U.S. 472 (2024) .......... 6, 15

*Srivastava v. BMW of North America, LLC*, 122 Cal. App. 5th 944 (2026) .......... 5

*Synopsys, Inc. v. Siemens Indus. Software Inc.*, 2021 U.S. Dist. LEXIS 171384 (N.D. Cal. Sept. 9, 2021) .......... 15, 17

*Turing Video Tech., Inc. v. AGI7 Inc.*, 2025 U.S. Dist. LEXIS 31856 (N.D. Cal. Feb. 21, 2025) .......... 14

*Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172 (N.D. Cal. 2013) .......... 12

*Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233 (N.D. Cal. 2019) .......... 6

*Wilson v. Huuuge, Inc.*, 944 F.3d 1212 (9th Cir. 2019) .......... 5

**STATUTES**

9 U.S.C. §3 .......... 11

18 U.S.C. § 1839(6)(A) .......... 13

Cal. Civ. Code
§ 1641 .......... 10
§ 1642 .......... 7

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 14th, 2027, at 1:30 pm, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA, in Courtroom 12, 19th Floor, before the Honorable Richard Seeborg, Defendants will, and hereby do, jointly move the Court pursuant to 9 U.S.C. §§ 3 and 4 for an order compelling arbitration of Plaintiff's claims and staying this action pending arbitration or, in the alternative as to Defendant ArcX Bio LLC ("ArcX"), staying the claims against it. Defendants' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Nithin Parsan ("Parsan Decl.") and all exhibits thereto, all documents in the Court's file, any matters of which this Court may take judicial notice, and on such other written and oral argument as may be presented to the Court. Defendants file this Motion concurrently with, and ask the Court to decide it before, their Motion to Dismiss. Defendants expressly reserve, and do not waive, their right to arbitrate every claim in this action.

## STATEMENT OF ISSUES TO BE DECIDED

This motion raises the following issues: (1) whether Benchling must arbitrate its claims against Mr. Parsan and HB 383 under the Parsan MAA and the HB 383 IC Agreement; (2) whether Benchling is equitably estopped from avoiding arbitration of its claims against Mr. Li and ArcX; and (3) whether the Court must stay this action, or in its discretion should stay any claim not referred to arbitration, pending the arbitration.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Benchling agreed to arbitrate this dispute not once but twice. In April 2026, it signed a Mutual Arbitration Agreement with its then-employee Nithin Parsan ("Parsan MAA") covering any dispute arising from his employment. In May 2026, it entered an Independent Contractor Agreement with HB 383, LLC ("HB 383") (the "HB 383 IC Agreement" and, with the Parsan MAA, the "Arbitration Agreements") covering any future dispute between Benchling and HB 383, "whether or not arising out of this Agreement." ECF No. 1-2 § 8.

Benchling cannot dispute either contract. It attaches and relies upon Mr. Parsan's Confidential Information and Invention Assignment Agreement ("CIIAA"), which invokes the Parsan MAA, for its claims. And it similarly attaches and relies upon the HB 383 IC Agreement in its Complaint, ECF 1-1, 1-2. It sues Mr. Parsan and HB 383 for breaching those contracts, and sues David Li on them too by alleging that HB 383 is his alter ego. Compl. ¶¶ 5-7, 61. Yet it ignores their arbitration clauses and files in this Court.

ArcX, the company Mr. Parsan and Mr. Li formed, did not sign either agreement, but Benchling pleads its liability through Mr. Parsan's and Mr. Li's alleged breaches of them. Compl. ¶¶ 35, 52-54, 75-76. Benchling cannot invoke those agreements against the signatories and dodge their arbitration clauses by also suing the signatories' company. If ArcX cannot compel arbitration, the claims against it turn on the same questions the arbitrator will decide and should be stayed.

This dispute belongs in arbitration because Benchling agreed it would be. Any claim the Court finds non-arbitrable should be stayed pending the arbitration.

## II. STATEMENT OF FACTS

Benchling is a company that sells software to support research and development in life sciences. Compl. ¶¶ 1, 16–18. Benchling employed Mr. Parsan from April 22, 2026, until it terminated his employment on September 19, 2026. Compl. ¶¶ 30, 46. On April 8, 2026, before he started, Mr. Parsan signed the CIIAA. *See* ECF 1-1.

Effective May 1, 2026, Benchling entered into the HB 383 IC Agreement with HB 383, a California limited liability company of which Mr. Li is the sole member, to engage Mr. Li's services. Compl. ¶¶ 7, 31. Mr. Li's engagement ended on or about September 4, 2026. Compl. ¶ 45. In that agreement, HB 383 and Benchling agreed to "submit to individual arbitration of any future disputes between them." ECF 1-2 § 8.

Mr. Parsan and Mr. Li (together, "Individual Defendants") formed ArcX as a California limited liability company on August 8, 2026. Compl. ¶¶ 8, 41.

Benchling asserts: (1) trade secret misappropriation claims under the Defend Trade Secrets Act against Mr. Parsan, Mr. Li, HB 383, and ArcX; (2) breach of contract and conversion claims against Mr. Parsan, Mr. Li, and HB 383; (3) restitution claims against ArcX; and (4) breach of duty

of loyalty claims against Mr. Parsan. Benchling's claims against all four defendants arise from either Mr. Parsan's employment relationship or HB 383's engagement. *See* Compl. ¶¶ 22-35. Benchling alleges that Mr. Parsan, Mr. Li, and HB 383 gained access to its alleged trade secrets and confidential information through that employment or engagement, then misappropriated the information for ArcX's benefit. Compl. ¶¶ 1-3.

Benchling's allegations against ArcX are derivative of its allegations against the Individual Defendants. It alleges that Mr. Parsan, Mr. Li, and HB 383 "further misappropriated Benchling's confidential and proprietary information, including its trade secrets, to defendant ArcX"; that ArcX is liable because its acquisition of that information "was facilitated by the other defendants by improper means"; that ArcX is liable "under the doctrine of respondeat superior" for Mr. Li's and Mr. Parsan's misappropriation; and, in Count IV, that Mr. Li, Mr. Parsan, and HB 383 "violated this trust and their obligations" and "improperly transferred" Benchling's information to ArcX. Compl. ¶¶ 52-54, 75-76. Benchling seeks damages, a permanent injunction, return of materials, and a constructive trust. Compl., Prayer for Relief ¶¶ (b), (d)-(f).

**A. The Arbitration Agreements.**

**1. The Parsan CIIAA and MAA.**

Section 15 of the April 8, 2026 CIIAA provides that "[a]ny and all claims or actions arising out of or relating to this Agreement shall be governed by the parties' Arbitration Agreement." ECF 1-1 § 15. On the same day, Mr. Parsan signed the Parsan MAA through DocuSign, and Benchling's co-founder, Sajith Wickramasekara, countersigned it. Parsan Decl. ¶ 2. Section 1 of the Parsan MAA provides: "The Parties agree to arbitrate all claims that may lawfully be arbitrated, including as set forth in Section 3 below, that the Parties may have against each other." Parsan Decl. Ex. A.

Section 3 of the Parsan MAA provides:

> This Agreement *covers all past, present, and future disputes, claims, controversies, or defenses* ***relating to, arising out of, or in connection with Employee's employment relationship with the Company*** . . . except as set forth in Section 4 below ("Claims"). The Claims include but are not limited to: . . . ***breach of contract/covenant (including confidentiality agreements)****; . . .;* ***breach of fiduciary duty****; theft,* ***conversion****, or misappropriation;* ***violation of intellectual property rights, including trade secrets****; . . . [and]* ***violation of any federal, state, local or other government constitution, statute, ordinance or regulation arising out of, related to, or governing Employee's relationship or employment with*** . . .

> (including any Claims for conduct occurring or Claims arising after the employment relationship ends) ***the Company*** . . . .

Parsan Decl. Ex. A (emphasis added). Section 3 of the Parsan MAA also explicitly delegates the arbitrability of a dispute to the arbitrator. *See id.* ("Additionally, the arbitrator, and not any federal, state, or local court, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this Agreement.").

**2. The HB 383 IC Agreement.**

On or around May 1, 2026, Benchling and HB 383 executed the HB 383 IC Agreement because Benchling "desires to retain [HB 383] as an independent contractor to provide data acquisition strategy and operational services for life science datasets." ECF 1-2. Mr. Li signed for HB 383 and Lauren DeVos signed for Benchling. *Id.*

Section 8 of the HB 383 IC Agreement provides:

> [T]he Parties have *agreed to submit to individual arbitration of* ***any future disputes between them****, whether or not arising out of this Agreement*. Thus, *all future disputes, controversies or differences which may arise between the Parties, whether arising in* ***contract****,* ***statute****,* ***tort****,* fraud, misrepresentation, discrimination, harassment, retaliation, common law or any other legal theory*, including, but not limited to* ***disputes relating to the making, performance, enforceability, or interpretation of this Agreement****, including the relationship created by this Agreement, and* ***claims or other disputes arising under any federal, state or local law or regulation, statute, law or ordinance whenever brought****, which cannot be settled by the Parties themselves, shall be settled finally and bindingly through individual arbitration*, to be held in San Francisco, California, in accordance with and governed by the Federal Arbitration Act and the Judicial Arbitration and Mediation Services, Inc. Streamlined Arbitration Rules & Procedures in effect at the time of the claim or dispute is arbitrated . . . THE PARTIES WAIVE THEIR RIGHT TO HAVE ANY SUCH DISPUTE, CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT.

ECF 1-2 § 8 (emphasis added).

**3. JAMS Rules.**

Both agreements incorporate JAMS rules. Parsan Decl. Ex. A § 2; ECF 1-2 § 8. Those rules provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." JAMS Employment Arbitration Rules & Procedures r. 11(b) (2021) (incorporated by the Parsan

MAA); JAMS Streamlined Arbitration Rules & Procedures r. 8(b) (2021) (incorporated by the HB 383 IC Agreement).

**III. LEGAL STANDARD**

The Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements according to their terms, so long as (1) "a valid agreement to arbitrate exists," and (2) "the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("courts must place arbitration agreements on an equal footing with other contracts"); *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original). Arbitration is "a matter of agreement between parties and where the scope of an agreement to arbitrate is in doubt, California law like federal law establishes a presumption in favor of arbitrability." *Srivastava v. BMW of North America, LLC*, 122 Cal. App. 5th 944, 951 (2026).

On the first prong, a signatory to the arbitration agreement seeking to compel arbitration "must prove the existence of a valid agreement by a preponderance of the evidence." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). To determine whether a valid agreement exists, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The second prong drops out if the agreement "clearly and unmistakably" delegates arbitrability to the arbitrator. *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024). The court then asks only whether a valid agreement exists and whether it delegates arbitrability. *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th

1021, 1029 (9th Cir. 2022). If so, the Court must compel arbitration. *See Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233, 1238 (N.D. Cal. 2019).

**A. Nonsignatory's Ability to Compel Arbitration.**

A nonsignatory may compel arbitration if the governing state contract law would let it enforce the agreement. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). *Kramer* sets the Ninth Circuit standard, applying California law:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

705 F.3d at 1128-29 (cleaned up); *see also In re Google Cloud Contact Ctr. AI Priv. Litig.*, 2026 U.S. Dist. LEXIS 242716, at *3-8 (N.D. Cal. Oct. 22, 2026) (applying *Kramer*, finding both circumstances applied, and compelling arbitration).

Equitable estoppel rests on fairness: a plaintiff may not sue to vindicate the benefits of a contract while avoiding its arbitration clause. *Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1133 (2025). It applies when a claim against a nonsignatory is "'intimately founded in and intertwined with' a contractual provision," meaning the plaintiff must depend on or invoke the contract's terms to state the claim. *Id.* at 1126 (citation omitted). A mere factual connection to the contract is not enough. *Id.* at 1133-38; *see Olson v. FCA*, 176 F.4th 612, 621-22 (9th Cir. 2026) (applying *Ford*). The question is therefore whether the cause of action is rooted in the contract containing the arbitration clause, not whether the claim would exist but for the parties' relationship.

**B. A Stay Pending Arbitration.**

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, §3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). A district court may, in its discretion, stay "an entire federal action pending resolution of arbitration proceedings, even though only some of the plaintiff's

claims [are] subject to arbitration, [when] both the federal action and arbitration involve[] identical questions." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1086 (9th Cir. 2024).

## IV. ARGUMENT

### A. Valid Arbitration Agreements Exist.

Courts "apply state-law principles of contract formation" to determine whether an agreement to arbitrate exists. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024) (citation omitted). Valid arbitration agreements can form through incorporation by reference in another valid contract. *Ruby Grapes, LLC v. UPS, Inc.*, 2026 U.S. Dist. LEXIS 76794, at *7 (N.D. Cal. Apr. 8, 2026).

#### 1. The Parsan MAA.

Benchling cannot dispute that the Parsan MAA is a valid, signed agreement. Mr. Parsan signed it through DocuSign on April 8, 2026, and a Benchling signature appears on the same document. Parsan Decl. ¶ 2 & Ex. A. "[O]ne who signs an instrument which on its face is a contract is deemed to assent to all its terms." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001). The Parsan MAA is also mutual: Benchling agreed to arbitrate its own claims against Mr. Parsan. Parsan Decl. Ex. A §§ 1, 7. The MAA is addressed to the "Employee," covers "past, present, and future" disputes relating to the employment relationship, and provides that employment itself manifests acceptance. *Id.* §§ 3, 7. Benchling's own Complaint confirms the point as it pleads that Mr. Parsan signed the CIIAA the same day and sues on it. Compl. ¶¶ 26, 61.

Section 15 of that CIIAA, which Benchling attached to its Complaint, provides that claims "arising out of or relating to" the CIIAA "shall be governed by the parties' Arbitration Agreement." ECF 1-1 § 15. The Parsan MAA, signed the same day, is that agreement. Because the two documents were executed as parts of one transaction, they are read together. Cal. Civ. Code § 1642.

**2. The HB 383 IC Agreement.**

Benchling cannot dispute the HB 383 IC Agreement either; it sues HB 383 and Mr. Li for breaching it.[1] Compl. ¶¶ 27, 61. Benchling and HB 383 signed it. ECF 1-2 at 12.

**B. The Parties Delegated Arbitrability.**

"A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all." *Caremark*, 43 F.4th at 1029. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). If the delegation is "clear and unmistakable," "a court possesses no power to decide the arbitrability issue." *Id.* at 68-69; *accord Fli-Lo Falcon*, 97 F.4th at 1194.

Here, both the Parsan MAA and HB 383 IC Agreement delegated the question of arbitrability. *See* Parsan Decl. Ex. A §§ 2, 3; ECF 1-2 § 8. Incorporation of the Judicial Arbitration & Mediation Services, Inc. ("JAMS") Rules and Procedures ("JAMS Rules") in an arbitration agreement "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209, 1212 (9th Cir. 2026) ("The agreement incorporates the JAMS rules, which delegate the question of the agreement's validity to the arbitrator."); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) (same). Both agreements incorporate JAMS rules. *See* Parsan Decl. Ex. A §§ 2 ("The Parties agree any arbitration shall be conducted … under the JAMS Employment Arbitration Rules & Procedures"), 3; ECF 1-2 § 8 ("individual arbitration, to be held … in accordance with and governed by the Federal Arbitration Act and the Judicial Arbitration and Mediation Services, Inc. Streamlined Arbitration Rules & Procedures[.]"). The Parsan MAA also delegates arbitrability by its terms: "the arbitrator, and not any federal, state,

---

[1] Benchling's breach of contract claim against Mr. Li is also based on the HB 383 IC Agreement even though Mr. Li did not sign the agreement in his individual capacity.

or local court, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this Agreement." Parsan Decl. Ex. A § 3. Either ground suffices.

The HB 383 IC Agreement also expressly delegates "disputes relating to the making, performance, enforceability, or interpretation of this Agreement." ECF 1-2 § 8. And the JAMS rules both agreements incorporate commit "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement . . . and who are proper Parties to the Arbitration," to the arbitrator. JAMS Employment Arbitration Rules & Procedures r. 11(b); JAMS Streamlined Arbitration Rules & Procedures r. 8(b).

Because both agreements clearly and unmistakably delegate arbitrability, the Court must enforce them as written. *Henry Schein*, 586 U.S. at 65. When delegation is sufficiently shown, "a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Id.* at 68. The Court should therefore compel arbitration with Mr. Parsan and HB 383 and leave scope disputes, including whether any claim or form of relief falls within the agreements, to the arbitrator.

As to Mr. Parsan and HB 383, the Court need only confirm that the agreements exist and delegate arbitrability. Both do. As to Mr. Li and ArcX, who did not sign, the Court first decides whether they may enforce the agreements, which they may under the doctrine of equitable estoppel, *see infra*; the delegation then carries scope and enforceability questions to the arbitrator.

### C. Alternatively, Every Claim Against Mr. Parsan, HB 383, and Mr. Li Falls Within the Arbitration Agreements.

If the Court reaches scope despite the delegation, every claim against these Defendants is covered. The Parsan MAA applies to "all past, present, and future disputes, claims, controversies, or defenses relating to, arising out of, or in connection with Employee's employment relationship with the Company or a Beneficiary Party," and lists among its covered claims "breach of contract/covenant (including confidentiality agreements)," "breach of fiduciary duty," "theft, conversion, or misappropriation," and "violation of intellectual property rights, including trade secrets." Parsan Decl. Ex. A § 3. Counts I (trade secret misappropriation), II (breach of contract), III (conversion), and V (breach of the duty of loyalty) against Mr. Parsan plainly fall within that list, and each rests on conduct Benchling alleges occurred during, or concerns information obtained

through, his employment. Compl. ¶¶ 28-46, 48-71, 78-81. The HB 383 IC Agreement is broader still: it covers "all future disputes, controversies or differences which may arise between the Parties, whether arising in contract, statute, tort, . . . common law or any other legal theory," and does so "whether or not arising out of this Agreement." ECF 1-2 § 8. Counts I through III against HB 383 fall within it. Any doubt about scope is resolved in favor of arbitration.

The limited carve-outs do not remove any claim. *First*, the Parsan MAA excludes only "temporary, preliminary, or emergency injunctive relief made to preserve the status quo prior to or in aid of arbitration." Parsan Decl. Ex. A § 4; *see also id.* § 10. Benchling has not sought that relief; it has filed no motion for a temporary restraining order or preliminary injunction. The exclusion does not reach Benchling's claims for compensatory and exemplary damages or restitution, and it does not reach a permanent injunction, which the arbitrator is empowered to award. *Id.* § 6 (arbitrator "is authorized to award any individual remedy or relief that would have been available to the Parties had the matter been heard in court").

*Second*, Section 11 of the CIIAA does not carve claims out of arbitration. It provides that either party "shall have the right to seek" injunctive relief for certain breaches; it does not say where. ECF 1-1 § 11. It must be read together with Section 15 of the same agreement, which sends claims "arising out of or relating to" the CIIAA to the parties' Arbitration Agreement, and with the Parsan MAA, which Mr. Parsan and Benchling signed the same day. Reading Section 11 as a forum-selection clause for every claim that seeks injunctive relief would leave Section 15 with little work to do. *See* Cal. Civ. Code §§ 1641, 1642. The more natural reading is that Section 11 preserves the substantive right to seek injunctive relief, which the arbitrator may award, while Section 15 and the MAA determine the forum. Regardless, Benchling's Complaint seeks both damages and injunctive relief, Compl. ¶¶ 57-58, 66, 71, 77, and the claims are based on the same conduct and legal theories.

*Third*, the HB 383 IC Agreement permits a party to seek "equitable, including injunctive, relief for breach of Section 4 or Section 5 of this Agreement in a court of competent jurisdiction." ECF 1-2 § 8. That carve-out is limited to equitable relief for breach of two specified sections. It does not reach Benchling's claims for damages, and it does not make the underlying disputes non-

arbitrable; it preserves a court forum for one kind of remedy. The rest of Section 8 sends "all future disputes" between the parties to arbitration. *Id.* At most, then, the carve-out would permit Benchling to seek equitable relief for breach of Sections 4 and 5 in court, and the Court should compel arbitration of everything else and stay the action. 9 U.S.C. § 3.

To the extent Benchling argues that the carve-outs make the delegation unclear as to claims that seek injunctive relief, that is a dispute over the Arbitration Agreements' "applicability," which the Parsan MAA assigns to the arbitrator. Parsan Decl. Ex. A § 3. The Court may not decline to enforce a clear delegation because it doubts the merits of the argument for arbitration. *Henry Schein*, 586 U.S. at 68-69.

**D. Benchling Must Arbitrate Its Claims Against Mr. Li Under Equitable Estoppel.**

Benchling's claims against Mr. Li are expressly premised on the HB 383 IC Agreement. Benchling does not allege that it entered into any contract with Mr. Li individually; its only contractual theory against him runs through the HB 383 IC Agreement and its allegation that HB 383 is his alter ego. Compl. ¶¶ 7, 27, 61. Mr. Li disputes that he is liable on that agreement, for the reasons in Defendants' concurrently filed Motion to Dismiss, but Benchling cannot sue him on it while disclaiming its arbitration clause.

Benchling sues Mr. Li for breach of the HB 383 IC Agreement even though he signed it only as HB 383's representative. Compl. ¶¶ 61, 64. Having agreed to arbitrate with HB 383, Benchling cannot enforce the contract's benefits against Mr. Li while denying its arbitration clause. *See Ford*, 17 Cal. 5th at 1133 ("If plaintiffs have agreed to arbitrate claims arising out of a contract dispute, they may not pursue a lawsuit to vindicate contractual provisions beneficial to them yet avoid an agreement to arbitrate, either by couching their claims as actions unrelated to the contract or by suing a nonsignatory."). Accordingly, Benchling's claims against Mr. Li must be arbitrated.

Benchling's claims against Mr. Li satisfy the *Ford* and *Kramer* standard. Count II is a claim for breach of the HB 383 IC Agreement, so Benchling must rely on its terms to state it. Counts I and III likewise depend on the same contract. Specifically, Benchling alleges that: (1) it owns the information at issue because defendants "agreed that Benchling owns their work for Benchling and the results of that work," and the HB 383 IC Agreement assigns Mr. Li's work product to it, Compl.

¶¶ 26-27, 68; (2) defendants' duty to keep the information secret arises from their agreements, *id.* ¶¶ 23-24, 28; and (3) they misappropriated it by violating those agreements, *id.* ¶ 35. Because Benchling's theories of ownership, duty, and wrongfulness each run through the contract, its claims against Mr. Li are intimately founded in and intertwined with it. *Herrera v. Cathay Pacific Airways Ltd.*, 104 F.4th 702, 708 (9th Cir. 2024) (reversing district court's denial of motion to compel by nonsignatory because the allegations regarding breach are "intimately founded in and intertwined with" the contract containing an arbitration clause) (internal citation and quotations omitted); *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1184-85 (N.D. Cal. 2013) (compelling arbitration based on nonsignatories' assertion of equitable estoppel as the arbitration agreement "expressly addresse[d] the use, dissemination, and ownership of the customer information that Defendants allegedly misappropriated"); *see also Coinmint, LLC v. DX Corr Design, Inc.*, 2023 U.S. Dist. LEXIS 235158, at *12 (N.D. Cal. Apr. 24, 2023) (R. Seeborg) (granting nonsignatory's request for a stay pending arbitration because of equitable estoppel as the underlying contract's obligations were "part and parcel of the allegations against Defendants"). In addition, Mr. Li signed the HB 383 IC Agreement as HB 383's sole member and representative, and the conduct Benchling attributes to him is HB 383's performance of that agreement. ECF 1-2 at 12; Compl. ¶ 7. Benchling also alleges that HB 383 is Mr. Li's alter ego. Compl. ¶ 7. Mr. Li does not concede that, but Benchling cannot invoke the allegation to reach him and disclaim it to avoid the arbitration clause.

**E. Benchling Must Arbitrate Its Claims Against ArcX Under Equitable Estoppel.**

Benchling must also arbitrate its claims against ArcX, which are intimately founded in and intertwined with the CIIAA and the HB 383 IC Agreement. Benchling alleges substantially interdependent and concerted misconduct by ArcX, Mr. Parsan, and Mr. Li that is founded in and intimately connected with the obligations in those agreements. Compl. ¶¶ 35, 52-54, 75-76.

Under *Ford* and *Olson*, the question is whether Benchling's claims against ArcX depend on or invoke the contractual obligations in the CIIAA and HB 383 IC Agreement, or instead rest on rights that exist independently of them. *Ford*, 17 Cal. 5th at 1126, 1133. Those obligations are enforceable in arbitration: Section 15 of the CIIAA routes claims to the Parsan MAA (which

expressly covers "breach of contract/covenant (including confidentiality agreements)"), and Section 8 of the HB 383 IC Agreement requires arbitration. Benchling's claims against ArcX depend on them in three ways.

*First*, ArcX's alleged wrongdoing is premised on its founders' alleged breach of their contractual obligations. Courts have applied estoppel where a plaintiff seeks to hold a nonsignatory company liable through signatory individuals' alleged wrongdoing. *Nutanix, Inc. v. Tessell, Inc.*, 2025 U.S. Dist. LEXIS 45307, at *14 (N.D. Cal. Mar. 12, 2025) (compelling arbitration under equitable estoppel when claims against a nonsignatory company defendant founded by individual defendants were "entirely premised upon [individual defendants'] employment agreements"); *CAP Diagnostics, LLC v. Emeritus Med. Tech. LLC*, 2023 U.S. Dist. LEXIS 215433, at *33 (C.D. Cal. Oct. 25, 2023) (compelling arbitration under equitable estoppel when the plaintiff "s[ought] to hold [nonsignatory company] liable *through* the alleged wrongdoing of [the individual signatory defendants]" (emphasis in original)). The Complaint alleges that Mr. Parsan and Mr. Li "planned to use" Benchling's information "to found and operate" ArcX, that they "violated their agreements" to do so, and that ArcX is liable because its acquisition of the information "was facilitated by the other defendants by improper means." Compl. ¶¶ 35, 53. The improper means Benchling alleges are, in substance, the Individual Defendants' violation of their agreements and of the duties of confidentiality and loyalty that Benchling pleads arise from the CIIAA and the HB 383 IC Agreement. *Id.* ¶¶ 23-28, 35, 50, 64. The Defend Trade Secrets Act itself defines improper means to include "breach or inducement of a breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A). Benchling's theory that ArcX received the information by improper means thus depends on the contractual duties of secrecy that the signatories allegedly breached.

Courts apply equitable estoppel when contracts containing arbitration agreements are necessary to the plaintiff's claims against the nonsignatory. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 876 (9th Cir. 2021) (compelling arbitration under equitable estoppel as the determination of the nonsignatory's liability "cannot be answered without reference to the [underlying contract]"). Resolving the claims against Mr. Parsan and HB 383 requires determining whether the information is a trade secret, whether Benchling owns it under the CIIAA and HB 383 IC Agreement, whether

Mr. Parsan and Mr. Li breached their obligations under those agreements, and whether anything was transferred to ArcX. Compl. ¶¶ 26-28, 35, 52-54, 64, 75-76. Resolving the claims against ArcX requires exactly the same determinations.

*Second*, ArcX's liability is derivative. Benchling pleads that ArcX is liable "under the doctrine of respondeat superior" for Mr. Li's and Mr. Parsan's misappropriation, and Count IV, the only count against ArcX alone, rests on the allegation that Mr. Li, Mr. Parsan, and HB 383 "violated this trust and their obligations" and "improperly transferred" the information to ArcX. *Id.* ¶¶ 54, 74-76. As pled, those predicates are the signatories' alleged breaches of the trust and obligations created by the CIIAA and the HB 383 IC Agreement.

The constructive trust Benchling seeks against ArcX likewise depends on Benchling's claim to own the information "including under the agreements." *Id.* ¶¶ 28, 73, 77; *Nutanix*, 2025 U.S. Dist. LEXIS 45307, at *20 (plaintiff's argument that it was "entitled under the Agreements to ownership of the Stolen IP" evidenced its "reliance on the terms of [the individual defendants'] employment agreements" as the basis for its claims against the nonsignatory defendant company); *see also Ford*, 17 Cal. 5th at 1136 ("the essential concern is whether plaintiffs are trying to enforce contractual terms beneficial to them while avoiding their own contractual agreement to arbitrate"). Benchling cannot pursue claims against ArcX on the basis of information Benchling claims to own under its Arbitration Agreements, then deny ArcX arbitration under the same agreements.

*Third*, Benchling alleges the kind of "substantially interdependent and concerted misconduct" that *Kramer*'s second circumstance addresses. Courts treat misconduct as concerted where a plaintiff seeks to hold a nonsignatory company liable through its signatory founder's alleged tortious conduct for the company's benefit. *See Turing Video Tech., Inc. v. AGI7 Inc.*, 2025 U.S. Dist. LEXIS 31856, at *13-15 (N.D. Cal. Feb. 21, 2025) (finding concerted misconduct where plaintiff sought "to hold [the nonsignatory company] liable through" the alleged conduct of its founder and CEO, who allegedly acted "at the direction of and for the benefit of" the company in alleged breach of agreement); *Nutanix*, 2025 U.S. Dist. LEXIS 45307, at *24-25 (finding concerted misconduct where complaint alleged an "unfair and unlawful scheme by [defendant company] and its founders," such that the "entire Complaint against [the company] would be unintelligible without

its interdependent allegations of [the founders'] conduct"); *CAP Diagnostics*, 2023 U.S. Dist. LEXIS 215433, at *33 (plaintiff sought to hold defendant company liable through individual defendants' actions "as the corporate officers of" defendant nonsignatory company). The Complaint alleges that Mr. Parsan and Mr. Li "worked together to steal" Benchling's information, formed ArcX, and used the information to pitch Benchling's customers and investors, and that ArcX "presents an ongoing threat of further misappropriation." Compl. ¶¶ 35, 38-44, 53. The misconduct attributed to ArcX is the very same misconduct attributed to its founders, carried out through ArcX, premised on the confidentiality, assignment, and loyalty obligations of its founders' agreements. *See Kramer*, 705 F.3d at 1128-29.

*Ford* and *Olson* are not to the contrary. There, the plaintiffs' claims against the manufacturer arose under statutes and manufacturer warranties that existed apart from the dealer sales contracts, and the manufacturer was a stranger to those transactions. *Ford*, 17 Cal. 5th at 1133-38; *Olson*, 176 F.4th at 622. ArcX, by contrast, is the vehicle through which the signatories allegedly committed the breaches Benchling sues on. If ArcX cannot itself compel arbitration, the claims against it should be stayed, as set out below.

### F. The Court Should Stay This Action Pending Arbitration.

Section 3 of the FAA requires a stay of any claim referred to arbitration. *Smith*, 601 U.S. at 478. If the Court compels arbitration of the claims against Mr. Parsan, Mr. Li, and HB 383 (and, if it so holds, ArcX), the Court must stay this action as to those claims. If the Court concludes that ArcX cannot itself compel arbitration, it should exercise its discretion to stay the claims against ArcX pending the outcome of the arbitration. Defendants have separately moved to dismiss and respectfully ask the Court to decide this Motion first. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023) (explaining that proceeding with substantive litigation before resolving arbitrability would cause "many of the asserted benefits of arbitration" to be "irretrievably lost"). Staying any non-arbitrable issues under the Court's inherent authority is "appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend on the arbitrator's decision." *Synopsys, Inc. v. Siemens Indus. Software Inc.*, 2021 U.S. Dist. LEXIS 171384, at *11 (N.D. Cal. Sept. 9, 2021) (citation omitted). To determine whether staying litigation

under its inherent authority is proper, a district court should weigh the following competing interests: (1) the possible damage that may result from granting a stay; (2) the hardship or inequity that a party may suffer if required to litigate; and (3) how a stay would affect the "orderly course of justice," including whether it would simplify or complicate factual and legal issues in the pending litigation. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).

Each factor favors a stay of any claim that is not referred to arbitration, including the claims against ArcX. The Ninth Circuit has cautioned that a stay that is lengthy and indefinite can effectively put a plaintiff out of court. *In re PG&E*, 100 F.4th at 1084. Defendants therefore propose a stay with defined milestones: Benchling would submit its arbitration demand within 30 days of the Court's order, and the parties would file a joint status report every 120 days.

*No possible damage from a stay.* Benchling will suffer no cognizable damage. Benchling has not moved for a temporary restraining order or preliminary injunction in the weeks since it filed suit, and the Arbitration Agreements preserve its ability to seek provisional relief if it believes it needs it. Parsan Decl. Ex. A §§ 4, 10; ECF 1-2 § 8. Mr. Parsan and Mr. Li, who founded ArcX and are the people Benchling alleges acted for it, will be parties to the arbitration, so a stay leaves Benchling with a forum to resolve the dispute. And Benchling controls how quickly the arbitration begins. Parsan Decl. Ex. A § 5 ("The Party making the Claim must initiate arbitration."). The relief it seeks against ArcX is money damages and equitable relief that depends on the outcome of its claims against Mr. Parsan, Mr. Li, and HB 383. Delay in recovering money damages is not irreparable harm. *Los Angeles Memorial Coliseum Com. v. National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). And Benchling's failure to seek preliminary relief undercuts any claim that a delay in obtaining equitable relief would cause irreparable harm. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015).

*No hardship or inequity to ArcX.* Absent a stay, ArcX would have to litigate in this Court the same questions its founders are litigating in arbitration. *See supra*, Section IV.E. Defending the same claims in two forums would mean duplicative discovery, depositions of the same witnesses twice, and the risk of inconsistent rulings on the same issues. That is more than the ordinary burden of defending a lawsuit.

*Orderly course of justice.* The arbitration will resolve the questions on which the claims against ArcX depend. Because ArcX's liability is pleaded as derivative of the signatories' conduct, a finding of no misappropriation, no breach, and no transfer would leave little or nothing against ArcX. Compl. ¶¶ 54, 76. The Parsan MAA provides that an award has no preclusive effect on any "third party claim or dispute," but a stay does not depend on preclusion. Parsan Decl. Ex. A § 6. Even without preclusive effect, the arbitrator's findings on trade secret status, ownership, and breach will narrow the issues for this Court, and discovery in the arbitration will inform what remains. Where the arbitrable claims predominate or the outcome of the other claims depends on the arbitrator's decision, a stay is appropriate. *Synopsys*, 2021 U.S. Dist. LEXIS 171384, at *10-11.

The Court should send all claims to arbitration. To the extent it does not, the Court should stay all arbitrable claims under Section 3 of the FAA and the rest discretionarily pending the outcome of the arbitration.

## V. **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court: (1) compel Benchling to arbitrate its claims against Mr. Parsan, HB 383, and Mr. Li before JAMS in San Francisco under the Parsan MAA and the HB 383 IC Agreement, and, under the doctrine of equitable estoppel, its claims against ArcX; (2) direct Benchling to submit its demand for arbitration to JAMS within 30 days; and (3) stay this action pending completion of the arbitration. In the alternative, if the Court declines to compel arbitration of the claims against ArcX, Defendants request that the Court stay those claims pending completion of the arbitration.

Dated: November 16, 2026

By: */s/ Jordan R. Jaffe*

Jordan R. Jaffe
Stephanie C. Cheng
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA 94105-1126

*Attorneys for Defendants*